**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

    Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **JOSEPHINE K. HAYWARD,** | Case No. 3:21-cv-00854 |
| **PLAINTIFF**, | |
| v. | **COMPLAINT** |
| | UNLAWFUL EMPLOYMENT ACTION |
| **TRANSCO INDUSTRIES, INC.,** | Title VII Discrimination and retaliation; Equal Pay Act; FMLA; and supplemental state law claims |
| **DEFENDANT**. | |
| | **JURY TRIAL DEMANDED** |

## I. <u>PRELIMINARY STATEMENT</u>

1.    Plaintiff Josephine Hayward brings this action to remedy violations of Plaintiff's

statutory rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; the

PAGE 1 – COMPLAINT AND DEMAND FOR JURY TRIAL

Equal Pay Act of 1963 as amended; the FMLA - 29 U.S.C. § 2601 *et seq.*; as well as supplementary state claims. Plaintiff seeks equitable relief, including economic and noneconomic damages, as well as attorneys' fees and costs.

## II. <u>JURISDICTION</u>

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. §1343, civil rights jurisdiction.

3.      Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or on the common law as the Oregon claims arise from the same nucleus of operative facts as the federal claims.

4.      All preconditions to jurisdiction pursuant to 42 U.S.C. § 2000e-5 have been satisfied.

        a.      On or about March 2, 2021, Plaintiff filed a charge of employment discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC), charge number 551-2021-00454 for gender discrimination and retaliation under Title VII of the Civil Rights Ace as well as for violations of the Equal Pay Act.

        b.      On March 8, 2021, the EEOC issued Plaintiff a Dismissal and Notice of Rights for charge number 551-2021-00454. The EEOC issued the Dismissal and Notice of Rights without investigating the charge and without making any findings as to the merits of the charge.

5.      The pendent claims are filed timely. Furthermore, if the expiration of the time to commence an action or give notice of a claim falls within the time in which any declaration of a state of emergency issued by the Governor related to COVID-19, and any extension of the

PAGE 2 – COMPLAINT AND DEMAND FOR JURY TRIAL

declaration, is in effect, or within 90 days after the declaration and any extension is no longer in effect, the expiration of the time to commence the action or give notice of the claim is extended to a date 90 days after the declaration and any extension is no longer in effect.

6.     Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District. Venue is appropriate in the Portland Division since Plaintiff worked in Portland.

### III. PARTIES

7.     Plaintiff, Josephine Hayward, is a citizen of the United States. At all times material, Plaintiff worked for Defendant in Portland, Multnomah County, Oregon.

8.     Defendant Transco Industries, Inc., is an Oregon corporation, registered to do business in Oregon. Defendant does regular and sustained business in Oregon, including Multnomah County, Oregon. Defendant has an office in Portland, Oregon, where Plaintiff was employed.

9.     At all times relevant, Defendant's owners, officers, employees, and supervisors as their conduct is alleged herein were acting within the course and scope of their employment with the defendant.

### IV. GENERAL FACTUAL ALLEGATIONS

10.     Defendant is engaged in the business of conveyor repair and heavy steel fabrication industries. At all times material, Defendant employed approximately 95 to 100 employees in Portland, Oregon.

11.     Plaintiff is a female. Defendant interviewed Plaintiff in multiple stages or steps for the open position of Defendant's Chief Financial Officer ("CFO"). A CFO is a senior corporate executive who is responsible for the overall planning and management of

PAGE 3 – COMPLAINT AND DEMAND FOR JURY TRIAL

a company's financial affairs. The CFO has primary responsibility for the planning, implementation, managing and running of all the finance activities of a company, including business planning, budgeting, forecasting and negotiations.

12.     At the job interview, Defendant's Human Resources Manager, Ronnie Goldrick, told Plaintiff that if she accepted the CFO position, she would be a salaried, exempt manager. At the interview, Ronnie Goldrick told Plaintiff that as CFO, she would be responsible for supervising Controller Pamela Purcell, AP Specialist Tiffany Alfred, AR Specialist Tom Connolly, Product Desk Coordinator Zachery Flenniken, Safety Manager Wayne Woods, and Goldrick herself, the Human Resources Manager. At Defendant's final interview of Plaintiff for the CFO position, Jeffrey Brown, the Chief Executive Officer (CEO) offered Plaintiff the job of Defendant's CFO.

13.     On April 16, 2018, Plaintiff began working for Defendant at its facility on NE 122nd Avenue in Portland, Oregon. After Plaintiff began working for Defendant, she was surprised to learn that her starting salary was $60,000 per annum.

14.     As stated above, as CFO, Plaintiff supervised Defendant's Controller. The Controller also has responsibility for Defendant's daily accounting operations. The Controller's responsibilities were different than those of the CF), Plaintiff then learned that the Controller was being paid $75,000 per annum, $15,000 more per annum than Plaintiff.

15.     Various members of Jeffrey Brown's family worked in the business. Jeffrey Brown, the CEO, told Plaintiff that as CFO, he expected her to groom his son, Alex Brown, the shop foreman, to run the company when Jeffrey Brown retired. Jeffrey Brown told Plaintiff that he would be leading the pace for this transition. Jeffrey Brown instructed Plaintiff to report to

PAGE 4 – COMPLAINT AND DEMAND FOR JURY TRIAL

both to Jeffrey Brown and Jason Brown, Executive Vice President, until Alex Brown transitioned to the Executive Office.

16.     After Plaintiff became the CFO, she learned that Defendant intended to train Pamela Purcell to take over the Human Resources Manager position for Ronnie Goldrick. Plaintiff learned that Goldrick planned to retire at the end of August 2018.

17.     On April 30, 2018, Plaintiff was assigned additional major responsibilities. Plaintiff was directed to take on the job duties of Controller in addition to her own duties as CFO. The addition of the Controller job duties was not anticipated by Plaintiff at the time she took the position as CFO. Defendant did not give Plaintiff an increase in compensation even though she was performing duties of both the CFO and Controller.

18.     As Plaintiff became familiar with the salaries of other managers, Plaintiff became aware her salary was significantly less than the salaries paid to male managers who were not senior corporate executives at her level. Plaintiff raised the negative discrepancy in her salary as compared to male employees to CEO Jeffrey Brown on multiple occasions throughout her employment with Defendant.

19.     Throughout her employment with Defendant, Plaintiff opposed the embezzlement After Plaintiff began working for Defendant, Plaintiff learned through the review of Defendant's books that a theft of company funds by other managers and corporate officials had occurred before her employment began. Plaintiff first learned that Pamela Purcell and Ronnie Goldrick were embezzling funds from Defendant. Plaintiff learned that Pamela Purcell and Ronnie Goldrick embezzled company funds by using company business checks to pay their personal debts to their creditors. In her review of the company books, Plaintiff discovered that Pamela

PAGE 5 – COMPLAINT AND DEMAND FOR JURY TRIAL

Purcell and Ronnie Goldrick disguised these personal debt payments as false company business transactions.

20.    Plaintiff also ran an audit trail report on prior bookkeeping and tax records which showed several large transactions for vendors that Defendant did not do business with and which had been used as company deductible expenses for tax expenses. Plaintiff suspected that Pamela Purcell and Ronnie Goldrick had cooked the books. On July 12, 2018, Plaintiff requested back up documentation from Pamela Purcell and Ronnie Goldrick for the suspect transactions. Instead of responding to Plaintiff's inquiry, Pamela Purcell and Ronnie Goldrick requested to meet with Jeffrey Brown.

21.    On July 13, 2018, Ronnie Goldrick and Pamela Purcell confessed to Jeffrey Brown that they were embezzling from Defendant. Jeffrey Brown told Plaintiff that Ronnie Goldrick and Pamela Purcell had each confessed to diverting $25,000 of company funds to cover their personal credit card expenses. Jeffrey Brown told Plaintiff that he was not going to discharge or discipline these embezzling employees.

22.    After speaking to Jeffrey Brown, and upon further investigation, Plaintiff discovered that Pamela Purcell and Ronnie Goldrick had actually stolen approximately $40,000 each of company funds. On July 14, 2018, Plaintiff sent an email with this information to Jeffrey Brown reporting the true amount of the theft of company funds. Plaintiff requested that Jeffrey Brown order Ronnie Goldrick and Pamela Purcell to pay the entire amount back to Defendant.

23.    As Plaintiff became more familiar with company financial records, Plaintiff was shocked to learn that the embezzlement of Defendant's funds was not limited to Pamela Purcell and Ronnie Goldrick but included CEO Jeffrey Brown and his brother, Vice-President Jason Brown. Plaintiff learned that Jeffrey and Jason Brown were treating the company as a source of

PAGE 6 – COMPLAINT AND DEMAND FOR JURY TRIAL

tax-free income. Jeffrey and Jason Brown boosted their official salaries in several ways. They were using company money to pay their personal expenses and then hiding those payments in the books as legitimate expenditures made on behalf of the company. They also boosted their income by selling company assets and then pocketing the money. When Plaintiff asked Jeffrey Brown why his official salary was so modest, Jeffrey Brown replied, "I kept it low so that I could make staff think I was making no more than they were and could in turn keep wages at a low margin, I then use my 'Expense Account' and company credit card to pay for my living expenses."

24.     The diversion of company funds to Jeffrey and Jason Brown under the guise of deductible business expenses resulted in unreported income being received by these individuals tax-free. Because the payments on behalf of these were improperly deducted by the company as business expenses, those shady practices resulted in Defendant paying less in payroll taxes, and potentially paying less corporate income taxes than it should have paid.

25.     On or about July 17, 2018, Plaintiff met with shop foreman Alex Brown and reported to him that she had discovered that his father, Jeffrey Brown, had funneled off approximately $2,000,000 in company funds to himself beyond his wages. Plaintiff reported to Alex Brown that the payments to Jeffrey Brown had been disguised as company business expenses and company credit card expenses.

26.     On or about July 30, 2018, Jeffrey Brown, his wife, board member Mindy Brown, Executive Vice President Jason Brown, his wife, board member Mindi Brown, Alex Brown, his wife Lyndsey Brown, Pamela Purcell, her husband, Robert Purcell, Ronnie Goldrick, her husband, Harold Goldrick, and AP Specialist Tiffany Alfred all signed a non-disclosure agreement in which they agreed to repay Defendant. The agreement included a statement that

PAGE 7 – COMPLAINT AND DEMAND FOR JURY TRIAL

Pamela Purcell would be paid her full salary from September 1, 2018 through May 31, 2019, even though she was an embezzling employee who was not longer working for Defendant.

27.     After the agreement was signed, Plaintiff met with Jeffrey Brown and told him that if she learned that he was engaged in any attempts to hide income while she was CFO, she would be forced to turn him into tax regulatory agencies.

28.     After the embezzlement was discovered, Defendant decided not to have Pamela Purcell replace Ronnie Goldrick as Human Resources Manager. Plaintiff requested that Ronnie Goldrick delay her retirement in order to train Tiffany Alfred for the position of Payroll Manager position. On August 31, 2018, Pamela Purcell left employment with Defendant.

29.     On October 18, 2018, Plaintiff was injured in an automobile collision on her way home from work. Plaintiff spoke to Jeffrey Brown and requested time off work to recuperate and attend medical appointments. Although Plaintiff was eligible for medical leave under the Oregon Family Leave Act, Jeffrey Brown discouraged Plaintiff from taking medical leave. As a consequence, Plaintiff limited her time away from work only to attend scheduled medical appointments.

30.     On November 2, 2018, Plaintiff met with Jeffrey Brown. and requested a raise. Plaintiff discussed that Pamela Purcell, whom she initially supervised, was paid more than she was. Jeffrey Brown raised Plaintiff's salary to $80,000 per annum.

31.     On December 14, 2018, while Plaintiff was attending a scheduled medical appointment, Jeffrey Brown both called and sent a text message to Plaintiff telling Plaintiff that she needed to be at the office.

32.     In January 2019, Human Resources Manager Ronnie Goldrick left employment with Defendant. On or about February 1, 2019, Tiffany Alfred replaced Ronnie Goldrick as

PAGE 8 – COMPLAINT AND DEMAND FOR JURY TRIAL

Human Resources Manager and received a raise in compensation. On February 28, 2019, Defendant hired Aaron Torpy to work temporarily as an AR Specialist. On March 23, 2019, Tiffany Alfred was terminated by the Plaintiff for falsifying her time records and giving herself a raise in addition to the raise she had just received on February 1, 2019.

33.     Upon Defendant's termination of Alfred, Plaintiff wore multiple hats. Plaintiff was responsible for the CFO, Controller, Human Resources Manager, and Payroll Manager duties.

34.     On April 1, 2019 Defendants hired Richard "Rick" Johnson as a Human Resources Generalist. Since Plaintiff was then also the Human Resources Manager, she was assigned to supervise Rick Johnson. On April 8, 2019, Aaron Torpy began training as the payroll processor.

35.     In November 2019, and again in May 2020, Plaintiff again approached Jeffrey Brown about pay discrepancies between her salary and that of the male managers. Plaintiff was a first level manager.  The second level managers were the Location Operations managers. Those were all male and had less responsibility than Plaintiff did. Each of those managers received a base salary that was more than Plaintiff was paid as well as quarterly commission bonuses. Plaintiff compared her salary to a male manager, Ryan Wallen, Defendant's Portland Operations Manager. Wallen managed a work crew at the same location where Plaintiff worked. Wallen was paid a $100,000 base salary which was more than Plaintiff was paid. Ryan Wallen was also paid overtime when he worked overtime, but Plaintiff was not paid for overtime work. Wallen was given a company vehicle with all fuel, auto repairs expenses paid for by Defendant. Plaintiff was not given a company vehicle. Although Plaintiff had significantly taken on more tasks and

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

responsibilities than had ever been expected of the past CFO, Jeffrey Brown refused to raise Plaintiff's salary to bring her into compliance with the salaries paid to male managers.

36.      On or about February 12, 2020, Plaintiff took medical leave for her own serious health condition. Plaintiff had major surgery that required a minimum of six to eight weeks of recovery time.. Plaintiff sent an email to Rick Johnson, who by then was the Human Resources Manager, requesting medical leave from February 10 through March 3, 2020, unless the doctor did not release her to return to work. Plaintiff said that the doctor may take her off work on medical leave until on or about April 23, 2020.

37.      On February 14, 2020, just two days after Plaintiff surgery, Jeffrey Brown began calling Plaintiff with financial and other work-related questions. It was clear that Jeffrey Brown expected Plaintiff to answer his calls and to begin working as soon as possible. Brown wanted to change financial institutions and the new institution was putting pressure on him to move forward. While Plaintiff was on medical leave, she also frequently received calls from other employees needing help.

38.      On March 3, 2020, Plaintiff sent Human Resources Generalist Johnson a note from her physician. The physician increased Plaintiff's medical leave through March 23, 2020. Despite knowing that Plaintiff was continuing on medica leave, Jeffrey Brown, as well as others, continued to press her to work throughout her leave since no one else was doing her duties.

39.      While Plaintiff supervised Richard "Rick" Johnson, she found that he was not capable of performing his assigned duties. Plaintiff had to perform the duties of benefits management and employee profile maintenance. Plaintiff also found that Johnson frequently made errors and she had to devote significant effort to fix his of errors such as inputting the wrong tax, missing adding the deduction to the employees profiles, and missing submitting five

PAGE 10 – COMPLAINT AND DEMAND FOR JURY TRIAL

401k employee contributions. Plaintiff was forced to take part in the Paylocity program implementation even though she had requested that the implementation be delayed because she was not prepared to take on so much. When the COVID pandemic occurred, Plaintiff helped Rick Johnson with document development and providing answers to the owners and managers who were wanting guidance. After Plaintiff spent an entire weekend preparing for a meeting, she learned that Rick Johnson had failed to complete tasks assigned to him necessary for the meeting. At one point, Rick Johnson called Plaintiff, told her that she made him feel like a failure and that he could not do his job.

40.     On April 25, 2020, despite Richard "Rick" Johnson's poor performance, Johnson demanded that Plaintiff give him a raise. Johnson said that he wanted a salary increase of not less than $10,000 per annum. Although Plaintiff supervised Johnson, Defendant was paying him $65,000 per annum which was more than Plaintiff's starting salary. Plaintiff stated that she would consider Johnson's request but would need approval, since Rick Johnson was requesting a 15% wage increase which by policy required the CEO's approval. Plaintiff said she would also discuss this with Alex Brown and get back to Rick Johnson after she did so.

41.     On or about May 1, 2020, the Plaintiff met with Alex Brown to inform him that after taking into consideration the fact that she had been carrying a large portion of Rick Johnson's job responsibilities, she believed that it was not in Defendant's best interests to give Johnson a raise. Alex Brown agreed that Johnson had not been performing as they had expected and should not be given an increase in compensation. Alex Brown said that he did not expect Johnson would be with the Company much longer. Alex Brown directed Plaintiff to discretely begin looking for Johnson's replacement.

PAGE 11 – COMPLAINT AND DEMAND FOR JURY TRIAL

42.    As Plaintiff's responsibilities increased, she was having an exacerbation of a sleep disorder. On May 4, 2020, Plaintiff told CEO Jeffrey Brown and Alex Brown that she suffered from a disability, a chronic sleep disorder. Plaintiff told them that the long hours she was putting into work was exacerbating her sleep disorder. Plaintiff told them that she was having trouble waking up to her alarm due to exhaustion. Plaintiff asked for the accommodation of a "modified" work schedule which allowed her to come in at a later start time.

43.    On May 8, 2020, Johnson presented to Plaintiff a wage increase form for the Plaintiff to sign. Plaintiff then stated that she could not, in good conscience, give Johnson the raise he requested. Johnson responded that he did not want a raise if Plaintiff felt he did not deserve it, then violently yanked the wage increase back and tore it in half. Johnson then said that he was quitting and that he was giving Plaintiff's his two-week notice. Plaintiff reported Johnson's dramatic behavior to Alex Brown. Plaintiff said she was frightened of Johnson Plaintiff reminded Alex Brown that Johnson was failing at his job which had in turn placed a large burden on the Plaintiff to fulfill those duties since they had to be done regardless. Despite knowing this, Alex Brown, went over Plaintiff's head, gave Rick Johnson a $10,000 per annum raise, and then removed Rick Johnson from Plaintiff's supervision even though Plaintiff remained responsible for Johnson's mistakes and inability to perform his job duties.

44.    Defendant promoted Johnson to Human Resources Manager. While Rick Johnson was Human Resources Manager, Rick Johnson told Plaintiff that Alex Brown, the Shop Foreman, had been designated as her supervisor and that she was no longer the Supervisor for the employees of her own department.

45.    On May 12, 2020, Rick Johnson and Alex Brown retaliated against Plaintiff. They gave Plaintiff's son, Aaron Torpy, who was an A/R Specialist/Payroll Clerk, a final written

PAGE 12 – COMPLAINT AND DEMAND FOR JURY TRIAL

warning. Rick Johnson and Alex Brown also told Plaintiff that they were terminating Plaintiff's Administrative Assistant effective May 15, 2020.

46.     In May 2020, Rick Johnson, began to refer to Plaintiff as "that woman" instead of calling her by her name. Plaintiff learned this from other employees. Plaintiff later saw a company email in which Rick Johnson referred to Plaintiff as "that woman."

47.     On June 5, 2020, Plaintiff talked to Jeffrey and Alex Brown about her disability. Plaintiff told them that her workload had become overwhelming. Plaintiff requested that Jeffrey Brown and Alex Brown accommodate her by hiring an accountant to assist her as a backup Controller and to assist with staff training, management, and position growth. Jeffrey and Alex Brown agreed and said they would reach out to an employment agency for candidate referrals. The Controller job was never filled before Plaintiff left employment.

48.     During preparation for an upcoming bank audit, Plaintiff learned that in October and December 2019, Jeffrey Brown sold surplus company property at auction. That funds from the auction sales were not accounted for as company revenue in the books. On May 29, 2020, Plaintiff asked Jeffrey Brown how much he received from the sale of Defendant's property sold at auction and what he had done with the money. Jeffrey Brown admitted to Plaintiff that he had pocketed the proceeds of the auction sales of company property for himself. On July 8, 2020, Plaintiff reported Jeffrey Brown's theft of the auction proceeds to Alex Brown, the Fabrication Shop Foreman.

49.     In June 2020, Larry Sprouse was hired as Payroll Clerk under Plaintiff's supervision. In July 2020, Larry Sprouse began preparing to become the Human Resources Manager pending Johnson's dismissal.

PAGE 13 – COMPLAINT AND DEMAND FOR JURY TRIAL

50.     On or about August 1, 2020, Larry Sprouse was promoted from Payroll Clerk to Acting Human Resources Manager. Rick Johnson was terminated from employment. On or about August 18, 2020, Larry Sprouse was formally promoted to Human Resources Manager.

51.     On August 26, 2020, Plaintiff talked to Human Resources Manager Larry Sprouse about her disability. Plaintiff told Larry Sprouse that she needed help with her workload as an accommodation for her disability. Plaintiff told Larry Sprouse that something needed to be done to address this issue and soon because it was becoming unbearable. Larry Sprouse vowed to assist in whatever was necessary to make the Company better going forward. Larry Sprouse said that a hostile work environment existed which was not being addressed and that a highly compensated male employee was toxic.

52.     On August 29, 2020, Plaintiff sent Larry Sprouse a message with her idea of a solution on how to positively address the hostile work environment and begin creating a team-oriented group instead of an us-versus-them mentality.

53.     Plaintiff uncovered further information showing that Jeffrey and Jason Brown were continuing to divert or embezzle Defendant's funds and assets to themselves. On September 4, 2020, Plaintiff reported to Alex Brown that Jeffrey Brown was continuing to embezzle funds. Plaintiff suggested that the company hire an in-house attorney to reduce company liability, to provide her with advice on the embezzlement, and advice how to best serve Defendant going forward.

54.     On or about September 25, 2020, Plaintiff injured her back in Defendants' parking lot. Plaintiff reported the injury to Defendant's Human Resources Manager, Larry Sprouse, and to Alex Brown. Plaintiff saw a physician who prescribed light duty work for Plaintiff. Plaintiff was directed by Larry Sprouse to stay home and work remotely until she

PAGE 14 – COMPLAINT AND DEMAND FOR JURY TRIAL

recovered from this injury. Defendant fired Plaintiff before she could complete a Form 801 Workers and Employer's Report of Occupational Injury or Disease.

55.     On or about September 29, 2020, Plaintiff again spoke with Alex Brown. Plaintiff told Alex Brown that the embezzlement of company funds was larger than she realized in early September. Plaintiff told Alex Brown that both Jeffrey and Jason Brown were embezzling from Defendant by utilizing company resources to pay for labor and freight to haul company assets to auction and then pocketing that money from the sale of those assets.

56.     On or about October 1, 2020, Plaintiff sent a text message to Defendant's Human Resources Manager, Larry Sprouse. In a text message, Plaintiff wrote that she had reported Jeffrey and Jason Brown's embezzlement of the auction funds to Alex Brown. Plaintiff also sent a text to Larry Sprouse stating that she was having issues with Defendant's owners embezzling and wanted to meet with Larry Sprouse and Alex Brown to discuss the issue.

57.     On October 6, 2020, the Plaintiff contacted Defendant's lender, Umpqua Bank, about the submission of the monthly Financial Statements. The bank was waiting for the August 2020 Borrowing Base Certificate submittal. Plaintiff contacted Defendant's banker, Henry Alvarez, Umpqua Bank, by text and telephone. Plaintiff informed Henry Alvarez that she had been unable to close the books for August 2020 because of a missing revenue from a sale of surplus property which she confirmed had not been deposited in Defendant's bank account. Plaintiff explained to Defendant's banker that both Jeffrey and Jason Brown had been selling Company inventory and were pocketing the money. Plaintiff said that she needed more time to investigate the issue before she could "ethically" close the month of August 2020. Henry Alvarez told Plaintiff he was documenting her call. Alvarez requested a written explanation of what Plaintiff told him for the banks documentation. Alvarez granted Plaintiff's request to delay the

PAGE 15 – COMPLAINT AND DEMAND FOR JURY TRIAL

submission of the August 2020 Financials and Borrowing Base Certification until Monday, October 12, 2020.

58.     On or about October 7, 2020, Plaintiff sent a text message to Larry Sprouse writing that she would be out of the office until October 12, 2020 on medical leave. Plaintiff also requested the meeting with Alex Brown and the head of Human Resources be rescheduled for October 12, 2020. Plaintiff informed Larry Sprouse that she intended to discuss with Alex Brown and Larry Sprouse the embezzlement of Defendant's funds, as well as Plaintiff's concern that she could not close the company books for August 2020 due to the fraud and embezzlement of funds she had discovered.

59.     On October 8, 2020, Defendant terminated Plaintiff's employment. Plaintiff was discharged by Alex Brown. Alex Brown called Plaintiff and told her that Defendant had decided to go in a different direction and to replace Plaintiff with a contract employee. Plaintiff was then contacted by Jeffrey Brown who said he was stepping down and was leaving the company.

**FIRST CLAIM FOR RELIEF**

(Title VII Civil Rights Act of 1964)

(Gender and Sex Discrimination – 42 U.S.C. §2000e-2)

60.     Plaintiff alleges all prior relevant paragraphs as if fully set forth herein.

61.     At all material times, Defendant was an employer within the meaning of 42 U.S.C. § 2000e (b).

62.     Defendant discriminated against Plaintiff with respect to the terms and conditions of her employment including compensation because of Plaintiff's gender and sex as alleged above. Defendant ultimately discharged Plaintiff from employment.

PAGE 16 – COMPLAINT AND DEMAND FOR JURY TRIAL

63.     As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer economic and noneconomic damages in an amount to be proved at trial.

64.     Plaintiff is entitled to an award for past lost wages and benefits, future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff's economic damages are continuing in nature and are not presently known.

65.     Plaintiff is entitled to an award for non-economic damages for her emotional distress.

66.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

67.     Plaintiff is entitled to post-judgment interest on all damages, costs and attorneys' fees from the date of judgment until the date paid.

68.     Pursuant to 42 U.S.C. § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

69.     Plaintiff also seeks an award for such additional relief as justice may require.

## SECOND CLAIM FOR RELIEF

(Gender Retaliation - 42 U.S.C. § 2000e-3)

70.     Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

71.     At all material times, Defendant was an employer within the meaning of 42 U.S.C. § 2000e (b).

PAGE 17 – COMPLAINT AND DEMAND FOR JURY TRIAL

72.     Defendant discriminated and retaliated against Plaintiff with respect to the terms and conditions of her employment because Plaintiff opposed unlawful gender and sex discrimination.

73.     As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer economic and noneconomic damages in an amount to be proved at trial.

74.     Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay and lost benefits. Plaintiff should be awarded past economic damages in an amount determined fair by a jury to compensate Plaintiff for lost employment opportunities, including, but not limited, promotions and raises. Plaintiff's economic damages are continuing in nature and are not presently known.

75.     Plaintiff is entitled to non-economic damages for her emotional distress.

76.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

77.     Plaintiff is entitled to post-judgment interest on all damages, costs, and attorneys' fees from the date of judgment until the date paid.

78.     Pursuant to 42 U.S.C. § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

79.     Plaintiff also seeks an award for such additional relief as justice may require.

### THIRD CLAIM FOR RELIEF

(Unlawful Employment Practices – ORS 659A. 030)

80.     Plaintiff realleges Plaintiff all prior relevant paragraphs as if fully set forth herein.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

81.     Defendant discriminated against Plaintiff in the terms and conditions of her employment based on sex and gender.

82.     Defendant paid Plaintiff wages at a rate less than it paid to one or more male employees performing similar work, in violation of ORS 6549A.030.

83.     Defendant allowed a hostile work environment to exist for female employees.

84.     Defendant discharged Plaintiff from employment.

85.     As a result of Defendant's discriminatory conduct, Plaintiff is entitled to economic damages for back pay and front pay, plus prejudgment interest.

86.     As a further result of defendant's discriminatory conduction, Plaintiff suffered from humiliation, emotional distress, and loss of enjoyment of life for which she is entitled to be compensated at an amount set by the jury.

87.     Pursuant to ORS 659A.885, Plaintiff is entitled to recover her reasonable attorney fees, costs, and expert fees.

## FOURTH CLAIM FOR RELIEF

### (Equal Pay Act of 1963, 29 U.S.C. Section 206 (d))

88.     Plaintiff alleges all prior relevant paragraphs as if fully set forth herein.

89.     Upon information and belief, Defendant pays women less than men for comparable and equal work.

90.     Defendant discrimination against Plaintiff on the basis of her sex in violation of the Equal Pay Act of 1963 by paying wages to Plaintiff at a rate less than Defendant paid to one or more male employees for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

PAGE 19 – COMPLAINT AND DEMAND FOR JURY TRIAL

91.    Defendant's failure to compensation Plaintiff equal to male employees was a willful violation.

92.    Pursuant to 29 U.S.C. § 216(3) and 29 U.S.C. § 255, Plaintiff is entitled to unpaid wages, as well as prejudgment interest, and an equal amount as liquidated damages.

93.    Pursuant to 20 U.S.C. Section 216(*b), Plaintiff is entitled to recover her reasonable attorney fees, costs, and expert fees.

### FIFTH CLAIM FOR RELIEF

(ORS 652.200 – Oregon's Equal Pay Act)

94.    Plaintiff realleges all prior relevant paragraphs as if fully set forth herein.

95.    Upon information and belief, Defendant has not, in good faith, completed an equal-pay-analysis of defendant's pay practices within three (3) years before the date that Plaintiff filed this action.

96.    Defendant discriminated against Plaintiff on the basis of her sex in violation of ORS 652.200 by paying Plaintiff wages at a rate less than paid to a male employee for work of comparable character, the performance of which required comparable skills.

97.    As a result of Defendant's discriminatory pay practices, Plaintiff is entitled to economic damages for discriminatory wages, plus prejudgment interest, and an equal amount in liquidated damages.

98.    Pursuant to ORS 652.230, Plaintiff is entitled to recover her reasonable attorney fees, costs, and expert fees.

### SIXTH CLAIM FOR RELIEF

(Family and Medical Leave Act of 1993 - 29 U.S.C. § 2601 et seq.)

99.    Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

PAGE 20 – COMPLAINT AND DEMAND FOR JURY TRIAL

100.    Defendant is an 'employer' within the meaning of 29 U.S.C. § 2611(4).

101.    Defendant employed at least 50 employees for each working day during each of 20 or more calendar work weeks in 2019, the year before

102.    At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

103.    At all times in 2019 and 2020, the year Plaintiff took medical leave, Defendant employed 50 or more employees with 75 miles of the worksite where Plaintiff performed work for Defendant.

104.    Plaintiff was employed by Defendant for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of her leave in 2020.

105.    Plaintiff was employed by Defendant for more than 12 months prior to commencing leave in 2020.

106.    At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

107.    Plaintiff took medical leave protected by the Family Medical Leave Act (FMLA).

108.    At all material times, Plaintiff suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

109.    Defendant interfered with Plaintiff for engaging in the protected activity of taking leave under FMLA. Defendant interfered with Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff's employment.

110.    As a direct and proximate result of Defendant's interference Plaintiff has suffered lost income and will continue to suffer past and future wages, past and future benefits, and other

PAGE 21 – COMPLAINT AND DEMAND FOR JURY TRIAL

expenses, all to Plaintiff's economic damages in an amount to be determined at trial.

111.    The Court should enter an order declaring that Defendant violated the FMLA.

112.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

113.    Plaintiff is entitled to an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A).

114.    Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to an award of attorneys' fees, expert fees, and costs incurred herein.

115.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SEVENTH CLAIM FOR RELIEF

### (Oregon Family Leave Act – ORS 659A.150 et. seq.)

116.    Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

117.    Plaintiff took medical leave protected by the Oregon Family Leave Act (OFLA).

118.    Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the years 2019 and 2020.

119.    Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the years 2019 and 2020.

120.    Immediately prior to commencing family leave in 2020, Plaintiff worked for Defendant for more than 180 days.

121.    Plaintiff worked an average of more than 25 hours per week for Defendant during the 180 days immediately preceding the dates on which Plaintiff commenced family leave.

PAGE 22 – COMPLAINT AND DEMAND FOR JURY TRIAL

122.    At all material times, Plaintiff had a serious health condition as that term is defined in ORS 659A.150(6).

123.    Defendant interfered, discriminated, and retaliated against Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff's employment.

124.    As a result of Defendant's interference, discrimination, and retaliation against Plaintiff, Plaintiff suffered and continues to suffer economic losses.

125.    As a result of Defendant's discrimination and retaliation against Plaintiff, Plaintiff is entitled to equitable relief.

126.    Pursuant to 659A.885, Plaintiff is entitled to recover back pay.

127.    The court should enter an order declaring that Defendant violated the OFLA.

128.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

129.    Pursuant to ORS 659A.885(1) and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert witness fees.

130.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## EIGHTH CLAIM FOR RELIEF

(ORS 659A.040 - Injured Worker Discrimination and Retaliation)

131.    Plaintiff realleges all relevant paragraphs.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

132.    Defendant discriminated and retaliated against Plaintiff by changing the terms and conditions of Plaintiff's employment. Defendant's actions violated ORS 659A.040, are an unlawful employment practice, and caused Plaintiff economic and noneconomic damages.

133.    Defendant's unlawful employment actions were taken against Plaintiff in substantial part because of one or more of the following:

(A)    Plaintiff reported an on-the-job injury;

(B)    Plaintiff applied for benefits, invoked or utilized the procedures provided in ORS Chapter 656;

(C)    Plaintiff was on light duty for Plaintiff's on-the-job injury as specified by Plaintiff's physician.

134.    As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

135.    Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

136.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

137.    The court should enter an order declaring that defendant violated ORS 659A.040.

138.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

PAGE 24 – COMPLAINT AND DEMAND FOR JURY TRIAL

139.    Pursuant to ORS Chapter 659A and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorney fees and costs, including expert witness fees.

140.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## NINTH CLAIM FOR RELIEF

### (ORS 659A.103 et seq. - Oregon Rehabilitation Act)

141.    Plaintiff realleges all relevant paragraphs.

142.    Plaintiff is a 'disabled person' as defined at ORS 659A.104(1).

143.    Defendant is an 'employer' as defined at ORS 659A.106.

144.    After Plaintiff disclosed Plaintiff's disability to defendant, defendant began to discriminate against Plaintiff as alleged above. Said discrimination was based on defendant's failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, and a hostile work environment.

145.    Defendant failed to engage in the interactive process with Plaintiff.

146.    Plaintiff could perform the essential functions of Plaintiff's job with defendant with or without the reasonable accommodations of allowing Plaintiff to continue to work.

147.    Defendant's refusal to provide reasonable accommodations for Plaintiff's known disability constitutes discrimination against Plaintiff due to Plaintiff's disability pursuant to ORS 659A.103 et seq. and terminated Plaintiff's employment.

148.    Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

PAGE 25 – COMPLAINT AND DEMAND FOR JURY TRIAL

149.    Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

150.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

151.    The court should enter an order declaring that defendant violated the Oregon Rehabilitation Act.

152.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

153.    Pursuant to ORS Chapter 659A and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorney fees and costs, including expert witness fees.

154.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## TENTH CLAIM FOR RELIEF

(Unlawful Employment Practices – ORS 659A.199 – Whistleblower)

155.    Plaintiff re-alleges all relevant paragraphs above as though fully restated herein.

156.    Plaintiff reported to Defendant conduct that Plaintiff believed was evidence of a violation of state or federal law, rule, or regulation. This included reports of embezzlement, tax fraud, reports of sex and gender discrimination and harassment, and unlawful pay discrimination based on gender and sex.

PAGE 26 – COMPLAINT AND DEMAND FOR JURY TRIAL

157.    Defendant discriminated and retaliated against Plaintiff because of the report made by Plaintiff. Defendant's actions violated ORS 659A.199, are an unlawful employment practice, and caused Plaintiff economic and noneconomic damages.

158.    As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

159.    Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights under ORS 659A.199, reinstatement, and an injunction prohibiting further discrimination and retaliation.

160.    If reinstatement is not appropriate, then Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

161.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

162.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

163.    Pursuant to ORS Chapter 659A.885 and ORS 20.107, the Plaintiff is entitled to recover her reasonable attorney fees and costs, including expert witness fees.

164.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

PAGE 27 – COMPLAINT AND DEMAND FOR JURY TRIAL

## ELEVENTH CLAIM FOR RELIEF

### (ORS Chapter 659A.230 – Whistleblower)

165.     Plaintiff re-alleges all relevant paragraphs.

166.     Plaintiff reported criminal activity to Defendant and Umpqua Bank.

167.     Defendant discriminated and retaliated against Plaintiff because of the reports made by Plaintiff. Defendant's actions violated ORS 659A.230, are an unlawful employment practice, and caused Plaintiff economic and noneconomic damages.

168.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

169.     Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

170.     Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

171.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

172.     Plaintiff is entitled to a declaration that the conduct of the Defendant violated ORS 659A.230.

PAGE 28 – COMPLAINT AND DEMAND FOR JURY TRIAL

173.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

174.    Pursuant to ORS Chapter 659A and ORS 20.107, the Plaintiff is entitled to recover her reasonable attorney fees and costs, including expert witness fees.

175.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## TWELFTH CLAIM FOR RELIEF

### (Wrongful Termination)

176.    Plaintiff realleges all relevant paragraphs.

177.    Defendant's conduct, as alleged, was in retaliation for Plaintiff assertion of claims under FMLA and OFLA and Plaintiff's whistleblowing, and as such constitutes a wrongful discharge under state common law.

178.    Plaintiff's remedies under state and federal statutory law does not constitute a complete remedy for the damage Defendant has inflicted.

179.    As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

180.    Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

181.    Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future

PAGE 29 – COMPLAINT AND DEMAND FOR JURY TRIAL

pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

182.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

183.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

184.    Pursuant to ORS 20.107, Plaintiff is entitled to an award of attorney fees and expert witness fees.

185.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendant:

1.    A sum which will fully compensate Plaintiff for Plaintiff's non-economic damages in a sum that is just as determined by a jury;

2.    A sum which will fully compensate Plaintiff for Plaintiff's economic damages in a sum that is just as determined by a jury;

3.    Equitable relief, including but not limited to, reinstatement if Plaintiff so chooses;

4.    Liquidated damages;

5.    Plaintiff's costs and disbursements incurred herein;

6.    Plaintiff's attorney fees; and

/////

PAGE 30 – COMPLAINT AND DEMAND FOR JURY TRIAL

7.      For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: June 4, 2021

**Law Offices of Daniel Snyder**

 */s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249

Of Attorneys for Plaintiff

PAGE 31 – COMPLAINT AND DEMAND FOR JURY TRIAL

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249
